Michael S. Scott, Esq. OSB# 973947
**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
Phone (971) 201-3200
Fax (971) 201-3202

Attorneys for Veristone Mortgage, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Hoodstock Enterprises, LLC,<br><br>              Debtor. | Case No. 22-31304-pcm12<br><br>Chapter 12<br><br>**OBJECTION TO DEBTOR'S NOTICE OF INTENT TO ENTER INTO A LEASE OF PROPERTY** |

Veristone Mortgage, LLC ("Veristone"), RESPONDS to Debtor's Notice of Intent to Enter Into a Lease of Property filed on December 20, 2022 (Doc #29) as follows:

1. The trust deed between Debtor and Veristone for the subject property includes an assignments of rents clause under which the rents received under the proposed lease would be payable to Veristone. *See Exhibit 2, Article III.* The loan has matured and is in default, and Veristone has not granted a license to Debtor to receive rents.

2. The tenant under the proposed lease, HR Investments, LLC, is an entity owned by Mark and Kathy Heron. This raises concerns that it is not an arms-length transaction, as well as feasibility concerns considering that the Herons are in a personal bankruptcy and they own at least one other entity which is also in bankruptcy.

3. A copy of the proposed lease was not attached to the Notice of Intent to Enter into a Lease, but per the notice the purpose of the lease is for parking trucks and trailers. This causes concerns under the Hazardous Substances provisions of the deed of trust, which prohibits storage of hazardous substances including petroleum. *See Exhibit 2, Section 1.6.*

Objection to Debtor's Notice of Intent to Enter Into Lease of
Property - 1
OR-22-171457

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

4. The income generated under the lease would not constitute income received from a "farming operation" for purposes of Chapter 12 eligibility. *See 11 U.S.C. §§ 101(18) and 109(f).*

WHEREFORE, Creditor respectfully requests that the Notice of Intent to Enter Into a Lease be denied, and any other relief as is just.

Dated: January 10, 2023

Respectfully submitted,

McCarthy & Holthus, LLP

By: /s/ Michael S. Scott

Michael S. Scott, Esq. OSB# 973947
**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204

Attorney for Veristone Mortgage, LLC

Objection to Debtor's Notice of Intent to Enter Into Lease of
Property - 2
OR-22-171457

**McCarthy & Holthus, LLP**
920 SW 3rd Avenue, 1st Floor
Portland, OR 97204
(971) 201-3200

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

**CERTIFICATE OF SERVICE**

On 1/10/2023, I served the foregoing **OBJECTION TO NOTICE OF INTENT TO ENTER INTO A LEASE OF PROPERTY** on the following individuals by electronic means through the Court's ECF program

| **TRUSTEE** | **DEBTOR'S COUNSEL** |
|---|---|
| Virginia Andrews Burdette | Nicholas J Henderson |
| vab@andrewsburdette.com | nhenderson@portlaw.com |

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

/s/ Andrei Mihai
Andrei Mihai

On 1/10/2023, I served the foregoing **OBJECTION TO NOTICE OF INTENT TO ENTER INTO A LEASE OF PROPERTY** on the following individuals by depositing true copies thereof in the United States mail at San Diego, California, enclosed in a sealed envelope, with postage paid, addressed as follows:

**DEBTOR**
Hoodstock Enterprises, LLC, 1749 22nd Street, Hood River, OR 97031

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Dated: 1/10/2023

/s/ Hue Banh
Hue Banh

# EXHIBIT 1

Exhibit 1 - Page 1 of 8

## PROMISSORY NOTE

$299,952.49                **Kirkland, Washington**                October 8th, 2020

**FOR VALUE RECEIVED,** Hoodstock Enterprises, LLC ("Maker"), promises to pay Veristone Mortgage, LLC ("Holder"), or order, the principal sum of TWO HUNDRED AND NINETY NINE THOUSAND NINE HUNDRED AND FIFTY TWO DOLLARS AND FORTY NINE CENTS ($299,952.49) in lawful money of the United States of America, on the following terms and conditions and secured by the property attached hereto as Exhibit A.

### Your Loan Program: Bridge+ Dutch

**1. INTEREST.** Interest shall accrue on the unpaid principal balance from the day of closing at the initial rate of ELEVEN PERCENT (11.00%) per annum. Interest shall accrue on the outstanding principal balance from the day of closing until the principal is paid in full. Interest will be prorated for the month of OCTOBER 2020, and calculated by the declining principal balance method.

Interest shall accrue on and be calculated based on the original principal sum, TWO HUNDRED AND NINETY NINE THOUSAND NINE HUNDRED AND FIFTY TWO DOLLARS AND FORTY NINE CENTS ($299,952.49), regardless of the amount drawn or advanced at any given time.

Depending on your loan program, additional terms and conditions may apply.

**2. PAYMENT OF NOTE.**

    **2.1.** Maker shall make monthly installment payments of interest-only, or more, at Maker's option. Provided, however, the first installment payment due will be upon funding (the "Closing Date") of the loan amount set forth hereinabove in the amount equal to the number of days between the actual Closing Date and the end of the month of October, 2020 at a calculated per diem rate of $91.65. Depending on your loan program, additional Loan payment terms may be provided herein.

    Your first full interest-only payment is due December 1st, 2020 in the amount of $2,749.56 .

    All subsequent monthly interest-only payments in the amount of $2,749.56 are due on the first of the month each month thereafter until all unpaid principal and accrued interest shall be paid in full.

    **2.2.** The entire principal balance, plus any and all accrued interest and additional payments due hereafter, shall be paid in full on or before 360 Days from the Closing Date (the "Maturity Date"); provided Maker is not in default under the terms of this Promissory Note or the Trust Deed(s) securing the same and Holder does not deem itself insecure.

        **2.2.1.** The Maker can extend the Maturity Date by 60 Days with a onetime extension payment of ONE PERCENT (1.0%) of the face value of the Note. The extension payment must be received on or before the original Maturity Date of the loan in order to receive the loan term extension.

    **2.3.** In the event any payment is not made when due, this Note shall be deemed in default without further action by the Holder.

**3. INTEREST RESERVE.** A portion of the Loan shall be allocated to an Interest Reserve Account as set forth in the Loan Documents and/or the Project Budget. In the absence of an Event of Default, Lender shall make monthly disbursements of funds from the Interest Reserve Account in order to make the monthly interest payments due on the Note. Disbursements of the interest reserve may be made directly to Lender,

without the need for any draw request from Borrower. If Lender determines, in its sole discretion, that the Interest Reserve Account is insufficient to pay all interest that will accrue on the Note, Borrower shall be obligated to pay from its own funds all accrued interest when due, without the use of any Loan proceeds.

**4. RIGHT OF PREPAYMENT.** Maker shall have the right to prepay the unpaid principal and interest in whole or in part at any time without penalty.

**5. NOTICES.** All notices, demands, requests, consents, approvals, and other instruments required or permitted to be given pursuant to the terms of this Note or Trust Deed(s) securing this Note shall be in writing and shall be deemed to have been properly given if sent by registered or certified mail, postage prepaid, return receipt requested, to the address set forth below:

**5.1.** TO MAKER
Hoodstock Enterprises, LLC
ATTN: M. Kathleen Heron, and Mark Heron
1749 22nd Street
Hood River, OR 97031

**5.2.** TO HOLDER
Veristone Mortgage, LLC
6725 116th Ave NE, Suite 210 Kirkland, WA 98033

Provided, however, that such address may be changed upon five (5) days written notice thereof similarly given to the other party. Such notice, demand, request, consent, approval and other instrument shall be deemed delivered on the third (3rd) day following the date of mailing.

**6. DEFAULT.** If Borrower defaults on the payment of any installment when due, fails to pay any amount when due, breaches of any condition or covenant of this Note, or breaches of any covenant, condition or agreement under the Trust Deed(s) securing this Note, then, at the option of the Holder of this Note, without prior notice, the entire indebtedness hereby represented shall become immediately due and payable, time being of the essence hereof. As long as this Note is in default, then, at the option of the Holder hereof, without prior notice, this Note shall bear interest at the rate of twenty four percent (24%) per annum until this Note has been paid in full. Default may be cured by bringing all delinquent payments current together with any late charges, with the exception of a Note that has matured.

**7. LATE CHARGE.** In addition to the default interest agreed to above, Maker further agrees to pay a late charge of ten percent (10%) of any payment that is not delivered to Holder within ten days (10) of its due date. Such late charge shall be payable with the next installment payment due. In the event such charge applies to the final payment due under this Note, including a balloon payment, if any, such charge shall be due and payable immediately.

**8. COLLECTION COSTS AND ATTORNEY'S FEES.** Maker promises to pay all costs and fees incurred by the Holder in the event payment is not made when due. Maker further promises that if foreclosure proceedings, or any other action is instituted to collect this Note or any part hereof, Maker will pay, in addition to costs and disbursements, Holder's attorneys' fee. Additionally, Maker promises to pay a $1,000.00 processing fee to Holder should foreclosure proceedings commence. Additional third party foreclosure fees will be charged at the rate provided by the third party and will be the responsibility of the Maker, including, but not limited to, dispute of default costs.

**9. VENUE.** At the option of the Holder, venue of any action hereunder shall be King County, Washington. Maker consents and submits to the jurisdiction of any local, state, or federal court located in King County,



Washington.

**10. WAIVER OF DEMAND.** Maker (and any endorser) hereby waives demand, presentment, protest, or notice of any kind, and expressly agrees that if this Note or any payment due hereunder may be extended, any such extension shall in no way impair the liability of Maker, or any surety hereunder.

**11. NO FURTHER ENCUMBRANCES.** As an express condition of making the loan secured by this Promissory Note, and Trust Deed(s) of even date herewith, Borrower shall not further encumber, pledge, mortgage, hypothecate, place any lien, charge or claim upon, or otherwise give as security the property serving as security for this Note or any interest therein nor cause or allow by operation of law the encumbrance of such property or any interest therein without the written consent of Lender even though such encumbrance may be junior to the encumbrance created by the Trust Deed(s). Encumbrance of the property contrary to the provisions of this provision shall constitute a default and Lender may, at Lender's option, declare the entire balance of principal and interest immediately due and payable, whether the same be created by Borrower or an unaffiliated third party asserting a judgment lien, mechanic's or materialmen's lien or any other type of encumbrance or title defect.

**12. EXECUTION AS PRINCIPAL.** Each person or entity signing this Note executes the same as and shall be bound as a maker and principal and not as a surety, accommodation party, guarantor or endorser.

**13. SECURITY.** This Note is secured by the Trust Deed(s) of even date herewith, the provisions of which are hereby incorporated by this reference.

**14. DEFINITIONS.** The word Maker shall be construed interchangeably with the words Borrower or Grantor and the word Holder shall be construed interchangeably with the words Lender or Beneficiary. In this Note, singular and plural words shall be construed interchangeably as may be appropriate in the context and circumstances to which such words apply.

**15. ASSIGNMENT.** Borrower shall not assign this Note without the prior written consent of Lender. Borrower will remain liable for payment of all sums advanced hereunder before and after any such assignment. Lender may assign its rights and obligations under this Note or the Loan, in whole or in part, or to sell the Loan or a participation interest in the Loan to any affiliate of Lender or third party. Borrower shall cooperate with Lender to effect an assignment or sale of the Loan by Lender.

**16. SUCCESSORS.** The terms of this Note will be binding upon and inure to the benefit of the heirs, legal representatives, and valid successors or assigns of Lender and Borrower.

**17. NO PARTNERSHIP OR JOINT VENTURE.** Neither anything contained herein nor the acts of the parties hereto will be construed to create a partnership or joint venture between Borrower and Lender.

**18. PARTIAL INVALIDITY.** If any one or more of the provisions contained in this Note are for any reason held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, but this Note shall be construed as if such invalid, illegal or unenforceable provision had never been set forth herein.

**19. APPLICABLE LAW.** This Note shall be construed in accordance with and governed by the laws of the State of Washington without regard to its choice of law rules.

**20. COUNTERPARTS.** This Note may be signed in one or more counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

**21. LIABILITY OF LENDER.** Lender shall in no event be responsible or liable to any person other than

Borrower for the disbursement of or failure to disburse the Loan proceeds or any part thereof and no contractor, subcontractor or material supplier shall have any right or claim against Lender under this Note or the other Loan Documents.

*[Signature page to follow]*

MAKER: Hoodstock Enterprises, LLC

By: _Kathleen Heron_

Signature: M. Kathleen Heron, Member
On Behalf of: Hoodstock Enterprises, LLC

Date: 10.9.2020.

By: _[signature]_

Signature: Mark Heron, Member
On Behalf of: Hoodstock Enterprises, LLC

Date: 10-9-2020

**ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY,
EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING
REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER
WASHINGTON LAW.**

HOLDER: Veristone Mortgage, LLC
(Accepted and approved as to form and content)

_[signature]_

Authorized Veristone Mortgage, LLC Signatory

Date: 10/14/2020

APN: ███████████

**Situs Address:** 4551 Post Canyon Drive Hood River, OR, 97031

**Legal Description:** That portion of the following described property lying West of Phelps Creek in Section 33, Township 3 North, Range 10 East of the Willamette Meridian, in the County of Hood River and State of Oregon: Beginning at a point in the West line of the Southeast quarter of the Southwest quarter of Section 33, Township 3 North, Range 10 East of the Willamette Meridian, in the County of Hood River and State of Oregon, that is North 00°25'05" West 435.60 feet from the Southwest corner of said legal subdivision; thence North 00°25'05" West along the West line of the Southeast quarter of the Southwest quarter of said Section 33 a distance of 891.75 feet to the Northwest corner of said legal subdivision; thence North 89°33'41" East along the North line of the Southeast quarter of the Southwest quarter of said Section 33, a distance of 1252.77 feet to the West line of that tract of land conveyed to Harold W. Dorzab et ux, by Deed recorded March 13, 1967, Film No. 670317, Deed Records Hood River County, State of Oregon; thence South 00°18'41" East a distance of 208.00 feet along the West line of the tract of land conveyed to Harold W. Dorzab; thence North 89°33'41" East a distance of 154.04 feet to a point on the West side of Phelps Creek; thence South along the West side of Phelps Creek a distance of 545 feet, more or less, to a point that is 574.20 feet North 00°18'41" West and 36.50 feet North 89°27'37" East of the South quarter corner of Section 33; thence South 89°27'37" West a distance of 36.50 feet to a point on the North/South Section line of Section 33; thence South 89°25'34" West a distance of 475.78 feet to a point on the West line of that tract of land conveyed to C. B. Young et ux by deed recorded April 20, 1966, Film No. 660736, Deed Records of Hood River County, State of Oregon; thence South 00°25'05" East, South along the West line of said Young tract of land a distance of 574.20 feet to a point on the South line of said Section 33; thence South 89°25'34" West along the South line of Section 33, a distance of 588.60 feet to a point; thence North 00°25'05" West a distance of 435.60 feet to a point; thence South 89°25'34" West a distance of 250.00 feet to the true point of beginning. EXCEPTING THEREFROM the following tract of land: That portion of the following described property in Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon: Commencing at the Southwest corner of the Southeast quarter of the Southwest quarter of Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon; thence North 89°25'34" East along the South line of said Section 33 a distance of 339.15 feet to a point; thence North 00°25'05" West parallel with the West line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 435.60 feet to the true point of beginning; thence continuing North 00°25'05" West parallel with the West line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 435.60 feet to a point; thence North 89°25'34" East parallel with the South line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 200 feet to a point; thence South 00°25'05" East parallel with the West line of the Southeast quarter of the Southwest quarter of Section 33, a distance of 435.60 feet to a point; thence South 89°25'34" West parallel with the South line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 200 feet to the true point of beginning. ALSO EXCEPTING the following: That portion of the following described property lying West of Phelps Creek in Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon. Commencing at a point in the West line of the Southeast quarter of the Southwest quarter of Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon, that is North 00°25'05" West 435.60 feet from the Southwest corner of said legal subdivision; thence North 89°25'34" East a distance of 250.00 feet to the POINT OF BEGINNING; thence continuing North 89°25'34" East a distance of 250.00 feet to a 5/8" iron rod; thence South 00°25'05" East to the South line of said Section 33 a distance of 435.60 feet to a 5/8" iron rod on the South line of said Section 33; thence South 89°25'34" West along the South line of said Section 33 a distance of 250.00 feet; thence North 00° West parallel to the West line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 435.60 feet to the TRUE POINT OF BEGINNING.

Loan ███████████ Rhett Bordner NMLS ███████ Veristone Mortgage, LLC NMLS ██████████

# EXHIBIT 2

Exhibit 2 - Page 1 of 26

Case 22-31304-pcm12     Doc 31     Filed 01/10/23

| | HOOD RIVER COUNTY, OR | **2020-04327** |
| | M-TD | |
| | Stn=8 DARCYM | **10/09/2020 03:28:02 PM** |
| | $125.00 $10.00 $11.00 $10.00 $64.00 | **$245.00** |
| | $25.00 | |
| | I certify that this instrument was received and recorded in the records of said county. | |
| | Brian D. Beebe, Director of Records and Assessment and Ex-Officio Recorder. | |



### AFTER RECORDING RETURN TO:

Veristone Mortgage, LLC I NMLS ID: ▮▮▮▮
6725 116th Ave NE, Suite 210
Kirkland, WA 98033
Rhett Bordner I NMLS ID: ▮▮▮▮
Loan: ▮▮▮▮

**TRUST DEED, ASSIGNMENT OF RENTS,**
**SECURITY AGREEMENT AND FIXTURE FILING**

THIS TRUST DEED, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Trust Deed"), dated as of 8th day of October, 2020, is entered into by and among Hoodstock Enterprises, LLC ("Grantor"), whose address is 1749 22nd Street , Hood River, OR 97031; Matthew M. Chakoian, Attorney at Law – Oregon State Bar #01227 ("Trustee"), whose address is 3710 168th St NE B201, Arlington, WA 98223; for the benefit of Veristone Mortgage, LLC , a Washington limited liability company ("Beneficiary"), whose address is 6725 116th Ave NE, Suite 210 Kirkland, Kirkland 98033.

WHEREAS, Beneficiary has loaned to Grantor the sum of TWO HUNDRED AND NINETY NINE THOUSAND NINE HUNDRED AND FIFTY TWO DOLLARS AND FORTY NINE CENTS (U.S. $299,952.49) which is repayable, with interest, in accordance the terms of that certain Promissory Note dated 8 day of October, 2020 (the Promissory Note, as it may be modified, extended, or replaced from time to time, is referred to herein as the "Note"). If not sooner paid, the Note is due and payable in full on the Maturity Date set forth in the Note.

NOW, THEREFORE, for good and valuable consideration, receipt of which is acknowledged, and for the purpose of securing the Obligations described in Section 1.1 below, Grantor irrevocably grants, bargains, sells, conveys, warrants, assigns, transfers, pledges, hypothecates and grants a security interest in, and confirms to Trustee in trust for the benefit and security of the Beneficiary, subject to and upon the terms and conditions contained in this Trust Deed, all of Grantor's right, title and interest in and to the real property located in Hood River County, state of Oregon, and more particularly described in Exhibit A attached to this Trust Deed (the "Property").

TOGETHER WITH all interests, estates and rights that Grantor now has or may acquire at any time in the future in (a) the Property, (b) any and all options, agreements and contracts for the purchase or sale of all or any part of the Property or any interest in the Property; (c) all easements, rights-of-way and rights used in connection with or as a means of access to the Property, and (d) all tenements, hereditaments and appurtenances in any manner belonging, relating or appertaining to the Property;

TOGETHER WITH all interests, estates and rights of Grantor, now owned or acquired at any time in the future, in and to any land lying within any streets, sidewalks, alleys, strips and

Exhibit 2 - Page 2 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

gores adjacent to or used in connection with the Property;

TOGETHER WITH all rights, titles and interests of Grantor, now owned or acquired at any time in the future, in and to any and all buildings and other improvements of every nature now or at any time in the future located on the Property and all fixtures of every kind and nature (including, all machinery, equipment and goods constituting fixtures) located on the Property or attached to, contained in or used in any such buildings and other improvements, and all appurtenances and additions to and substitutions and replacements of such buildings and improvements (collectively, the "Improvements");

TOGETHER WITH all present and future rights to the use of any trade name by which all or any portion of the Property and the Improvements are known; any books and records relating to the use and operation of all or any portion of the Property and Improvements; all right, title and interest of Grantor in, to and under all present and future plans, specifications and contracts relating to the design, construction, management or inspection of any Improvements; and all rights, titles and interests of Grantor in and to all present and future licenses, permits, approvals and agreements with or from any municipal corporation, county, state or other governmental or quasigovernmental entity or agency relating to the development, improvement, division or use of all or any portion of the Property to the extent such trade names, licenses, permits, approvals and agreements are assignable by law; and all other general intangibles relating to the Property, the Improvements or their use or operation;

TOGETHER WITH all rights of Grantor in and to any escrow or withhold agreements, title insurance, surety bonds, warranties, management contracts, leasing or sales agreements, and service contracts which are in any way relevant to the ownership, development, improvement, management, sale or use of all or any portion of the Property or any of the Improvements;

TOGETHER WITH Grantor's rights under any payment, performance, or other bond in connection with construction of any Improvements, and all construction materials, supplies, and equipment delivered to the Property or intended to be used in connection with the construction of improvements on the Property;

TOGETHER WITH all leasehold estates and the right, title and interest of Grantor in and to all leases and subleases covering all or any portion of the Property or Improvements, whether now existing or arising at any time in the future, and all rents and deposits paid to Grantor in connection with such leasehold estates, leases and subleases, as more specifically provided for in Article III herein;

TOGETHER WITH all rights, interests and claims that Grantor now has or may acquire at any time in the future with respect to any damage to or taking of all or any part of the Property or the Improvements, including any and all proceeds of insurance in effect with respect to the Improvements, any and all awards made for taking by eminent domain, or by any proceeding or purchase in lieu of such a taking, of the whole or any part of the Property or the Improvements, and any and all awards resulting from any other damage to the Property or the Improvements, all of which are assigned to the Trustee for the benefit of the Beneficiary, and, subject to the terms of this Trust Deed, the Trustee is authorized to collect and receive the

Exhibit 2 - Page 3 of 26

proceeds of and to give proper receipts and acquittances for, and to apply those proceeds to the Obligations except as otherwise provided in this Trust Deed;

TOGETHER WITH any and all mineral, oil and gas rights, air rights, development rights, water rights and water stock, drainage rights, zoning rights and other similar rights or interests which benefit or are appurtenant to the Property or the Improvements to the extent the same are assignable;

TOGETHER WITH all products of and proceeds from any of the tangible and intangible property described above.

All of the property described above is sometimes referred to as the "Trust Property."

TO HAVE AND TO HOLD the Trust Property to the Trustee and its successors and assigns for the benefit of the Beneficiary and its successors and assigns, forever.

PROVIDED ALWAYS, that if all the Obligations are paid, performed and satisfied in full, then the lien and estate granted by this Trust Deed will be reconveyed.

This Trust Deed, the Note, and all other agreements and instruments executed at any time in connection with this Trust Deed, whether prior to, contemporaneously with, or after the date hereof, are sometimes collectively referred to herein as the "Loan Documents."

GRANTOR COVENANTS AND AGREES AS FOLLOWS:

**ARTICLE I**
PARTICULAR COVENANTS AND WARRANTIES OF GRANTOR

**1.1.** *Obligations Secured.* This Trust Deed secures the following, collectively referred to as the "Obligations":

**1.1.1.** The payment of all indebtedness and the performance of all covenants and obligations of Grantor under the Loan Documents, whether such payments and performance are now due or become due in the future;

**1.1.2.** The payment and performance of all covenants and obligations in all other security agreements, notes, agreements and undertakings now existing or executed in the future by Grantor with or for the benefit of Beneficiary; and

**1.1.3.** The payment and performance of any and all other indebtedness and obligations of Grantor to Beneficiary of any nature whatsoever, whether direct or indirect, primary or secondary, whenever and however arising and whether or not presently contemplated, and whether or not reflected in a written agreement or instrument.

**1.2.** *Payment of Indebtedness, Performance of Covenants.* Grantor will duly and punctually pay and perform all of the Obligations.

**1.3.** *Property.* Grantor warrants that it holds good and merchantable title to the Property and the Improvements, free and clear of all liens, encumbrances, reservations, restrictions, and easements except those specifically listed in Exhibit B attached to this Trust Deed. Grantor

Exhibit 2 - Page 4 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

covenants that it will forever defend Beneficiary's and Trustee's rights under this Trust Deed and the priority of this Trust Deed subject only to those exceptions to title listed in Exhibit B.

**1.4.** *Further Assurances; Filing; Re-Filing; Etc.*

**1.4.1.** Grantor will execute, acknowledge and deliver, from time to time, such further instruments as Beneficiary or Trustee may reasonably require to accomplish the purposes of this Trust Deed.

**1.4.2.** Grantor, immediately upon the execution and delivery of this Trust Deed, and subsequently from time to time, will cooperate to the fullest extent reasonably possible to cause this Trust Deed, any security agreement, mortgage or deed of trust supplemental to this Trust Deed and each instrument of further assurance to be recorded and re-recorded in such manner and in such places as may be required by any present or future law in order to perfect, and continue perfection of, the lien and estate of this Trust Deed.

**1.4.3.** Grantor will pay all filing and recording fees, and all expenses incident to the execution, filing, recording and acknowledgment of this Trust Deed, any security agreement, mortgage or deed of trust supplemental to this Trust Deed and any instrument of further assurance, and all federal, state, county and municipal taxes, assessments and charges arising out of or in connection with the execution, delivery, filing and recording of this Trust Deed, any security agreement, mortgage or deed of trust supplemental to this Trust Deed or any instruments of further assurance.

**1.5.** *Compliance with Laws.* Grantor further represents, warrants and covenants that Grantor and its operations upon the Property will at all times comply in all material respects with all applicable laws, statutes, ordinances, regulations and codes of all federal, state and local governments (collectively "Laws"), and all covenants, conditions, easements and restrictions affecting the Property (collectively, "Covenants"):

**1.6.** *Definitions; Environmental Covenants; Warranties and Compliance.*

**1.6.1.** For purposes of this section, Environmental Law means any federal, state or local law, statute, ordinance, or regulation pertaining to health, industrial hygiene, or environmental conditions on, under or about the Property, including the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 USC § 9601 et seq., and the Resource Conservation and Recovery Act of 1976, 42 USC § 6901 et seq.

**1.6.2.** For the purposes of this section, "Hazardous Substance" includes:

**1.6.2.1.** *All "hazardous substances" as designated pursuant to 40 CFR Part 302;*

**1.6.2.2.** *All "hazardous wastes" within the meaning provided in 40 CFR 261.3;*

**1.6.2.3.** *All "extremely hazardous substances" as listed in 40 CFR Part 355;*

**1.6.2.4.** *All "hazardous chemicals" as defined under 29 CFR § 1910.1200(c);*

**1.6.2.5.** *All "toxic chemicals" listed in 40 CFR Part 372;*

**1.6.2.6.** *Those substances defined as "hazardous" or "toxic" in the Hazardous Materials Transportation Act, 49 USC § 1801 et seq. or listed in 49 CFR Part 172;*

**1.6.2.7.** *All materials, wastes, and substances which are designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 USC § 1251 et seq. (33 USC § 1321) or listed pursuant to Section 3076 of the Clean Water Act (33 USC §*

Exhibit 2 - Page 5 of 26

Case 22-31304-pcm12   Doc 31   Filed 01/10/23

*1317);*

**1.6.2.8.** *All "hazardous substances" as defined in Chapter 453 and 466 of Oregon Revised Statutes;*

**1.6.2.9.** *All materials, substances, and wastes which are or which contain (A) asbestos, (B) polychlorinated biphenyls, (C) explosives, except such explosives as are used during construction in accordance with law; (D) petroleum, and any fractions of petroleum; or (E) radioactive materials; and*

**1.6.2.10.** *Such other substances, materials, and wastes which are or become regulated or classified as hazardous or toxic under federal, state, or local laws or regulations.*

All of the preceding statutory or regulatory citations shall be deemed to include amendments and similar statutes, rules, regulations and orders promulgated from time to time.

**1.6.3.** Grantor will not use, generate, manufacture, produce, store, release, discharge, or dispose of on, under or about the Property or its ground water, or transport to or from the Property any Hazardous Substance and will not permit any other person to do so, except for such Hazardous Substances as may be used in the ordinary course of its business, so long as such substances are stored and used in accordance with all applicable Environmental Laws, including those relating to licensure, notice and record keeping.

**1.6.4.** Grantor will keep and maintain the Property in compliance with, and will not cause or permit the Property, including groundwater, to be in violation of, any Environmental Law.

**1.6.5.** Grantor will give prompt written notice to Beneficiary of any one or more of the following:

**1.6.5.1.** any proceeding or inquiry by any governmental authority with respect to any alleged violation of any Environmental Law or the presence of any Hazardous Substance on the Property or the migration of any Hazardous Substances from the Property to any other premises;

**1.6.5.2.** all known claims made or threatened by any person against Grantor or the Property relating to any loss or injury resulting from any Hazardous Substance or the violation of any Environmental Law;

**1.6.5.3.** the existence of any Hazardous Substance on or about all or any portion of the Property, except such Hazardous Substances as may be used in the ordinary course of Grantor's business so long as such Hazardous Substances are stored and used in accordance with all applicable Environmental Laws; and

**1.6.5.4.** Grantor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could in Grantor's judgment cause any restrictions on the ownership, occupancy, transferability or use of the Property under any Environmental Law.

**1.6.6.** Grantor will promptly provide to Beneficiary copies of all reports, documents and notices relating to the Property or Improvements provided to or received from any agency administering any Environmental Laws. Beneficiary will have the right to join and participate, in its own name if it so elects, in any legal proceeding or action initiated with respect to the Property or Improvements in connection with any Environmental Law and have its attorney fees in connection with such participation paid by Grantor, if Beneficiary determines in its sole discretion that such participation is necessary to

Exhibit 2 - Page 6 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

protect its interest in the Trust Property.

1.6.7. If, at any time, Beneficiary has reason to believe that any release, discharge or disposal of any Hazardous Substance affecting the Property or Improvements has occurred or is threatened, or if Beneficiary has reason to believe that a violation of an Environmental Law has occurred or may occur with respect to the Property or Improvements, Beneficiary may require Grantor to obtain or may itself obtain, at Grantor's expense, an environmental assessment of such condition or threatened condition by a qualified environmental consultant. Grantor, or Beneficiary, if applicable, shall promptly provide to the other a complete copy of any environmental assessment obtained by such party.

1.6.8. In the event that any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature ("Remedial Work") is required under any applicable local, state or federal law or regulation, any judicial order, or by any governmental agency or person because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a Hazardous Substance in or into the air, soil, ground water, surface water or soil vapor, on, about, or under all or any portion of the Property or the contamination (whether presently existing or occurring after the date of this Trust Deed) of the buildings, facilities, soil, ground water, surface water, air or other elements on or under any other property as a result of Hazardous Substances emanating from the Property, Grantor will, within 30 days after written demand by Beneficiary for performance by Beneficiary (or such shorter period of time as may be required under any applicable law, regulation, order or agreement), commence and then diligently prosecute to completion, all such Remedial Work. All costs and expenses of such Remedial Work will be paid by Grantor including Beneficiary's reasonable attorney fees and costs incurred in connection with monitoring or review of the legal aspects of such Remedial Work. In the event Grantor fails to timely commence, cause to be commenced or diligently prosecute such Remedial Work, Beneficiary may, but will not be required to, cause such Remedial Work to be performed, and all costs and expenses of, or incurred in connection with such Remedial Work, will become part of the indebtedness secured by this Trust Deed and will bear interest until paid at the rate provided in the Note.

1.6.9. Grantor will protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including reasonable attorney fees and costs) directly or indirectly arising out of or attributable to Grantor's use, generation, manufacture, production, storage, release, threatened release, discharge or disposal, of a Hazardous Substance on, under or about the Property, including the costs of any required repair, cleanup, containment or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans.

1.6.10. Grantor represents and warrants to Beneficiary that:

1.6.10.1. Grantor is not in violation of or subject to any existing, pending or threatened investigation by any governmental authority under any Environmental Law.

1.6.10.2. Grantor has not and is not required by any Environmental Law to obtain any permit or license beyond what it has obtained to use the Improvements.

Exhibit 2 - Page 7 of 26

**1.6.11.** All representations, warranties, and covenants in this Section 1.6 will, to the maximum extent permissible under applicable law, survive the satisfaction of the Obligations, the reconveyance of the Trust Property, and/or the foreclosure of this Trust Deed by any means.

**1.7.** *Maintenance and Improvements.* Grantor will not permit all or any part of the Improvements to be removed, demolished or materially altered without Beneficiary's prior written consent; provided, however, that Grantor may remove, demolish, or materially alter such Improvements as become obsolete in the usual conduct of Grantor's business, if the removal or material alteration does not materially detract from the operation of the Grantor's business and if Improvements which are demolished or removed are promptly replaced with Improvements of like value and quality. Grantor will maintain the Property and Improvements in good repair, working order and condition, except for reasonable wear and use, and will at Beneficiary's election restore, replace or rebuild all or any part of the Improvements now or at any time in the future damaged or destroyed by any casualty (whether or not insured against or insurable) or affected by any Condemnation (as defined in Section 2.01). Grantor will not commit, permit or suffer any waste or deterioration of the Trust Property. Grantor will give Beneficiary no less than 10 days prior notice before commencing any construction, alteration or improvement on the Property exceeding $20,000 in cost.

**1.8.** *Liens.* Grantor will not create, suffer or permit to be created any mortgage, deed of trust, lien, security interest, charge or encumbrance upon the Trust Property prior or senior to, on a parity with, or subordinate to the lien of this Trust Deed, except as specifically provided in Exhibit B attached to this Trust Deed.

**1.9.** *Impositions.*
    **1.9.1.** Grantor will pay or cause to be paid, when due and before any fine, penalty, interest or cost attaches, all taxes, assessments, utility charges and all other governmental or nongovernmental charges or levies now or at any time in the future assessed or levied against any part of the Trust Property (including levies or charges resulting from Covenants affecting the Trust Property) or upon the lien or estate of the Beneficiary or Trustee in the Trust Property (collectively, the "Impositions"); provided, however, that if by law any such Imposition may be paid in installments (whether or not interest will accrue on the unpaid balance), Grantor may pay such Imposition in installments (together with accrued interest, if any, on the unpaid balance) as they become due, before any fine, penalty or cost attaches. Grantor will also pay when due all claims for labor, materials or supplies that, if unpaid, might become a lien on all or any portion of the Trust Property.
    **1.9.2.** Grantor may, at its expense and after prior notice to Beneficiary, contest by appropriate legal, administrative or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any Imposition or lien for any Imposition or any claim or lien of any laborer, materialman, supplier or vendor, and may withhold payment of such claim, lien or Imposition pending completion of such proceedings if permitted by law, provided that: (i) such proceedings will suspend

Exhibit 2 - Page 8 of 26

Case 22-31304-pcm12   Doc 31   Filed 01/10/23

collection from the Trust Property; (ii) neither the Trust Property, in whole or in part, nor any interest in the Trust Property will be sold, forfeited or lost if Grantor pays the amount or satisfies the condition being contested, and Grantor would have the opportunity to do so in the event of Grantor's failure to prevail in the contest; (iii) neither Beneficiary nor Trustee will, by virtue of such permitted contest, be exposed to any risk of any liability for which Grantor has not furnished additional security as provided in clause (iv) below; and (iv) Grantor will have furnished to Beneficiary additional security in respect of the claim being contested or the loss or damage which may result from Grantor's failure to prevail in such contest in such form and amount as may be reasonably requested by Beneficiary.

1.9.3. Grantor shall furnish to Beneficiary promptly upon request reasonably satisfactory evidence of the payment of all Impositions. Beneficiary is hereby authorized to request and receive from the responsible governmental and non-governmental personnel written statements with respect to the accrual and payment of all Impositions.

**1.10.** *Books and Records; Inspection of the Property.* Grantor will keep complete and accurate records and books of account in accordance with generally accepted accounting principles consistently applied (it being understood that interim financial statements may be subject to year-end adjustments and not include footnotes) and will permit Trustee, Beneficiary and their authorized representatives to enter and inspect the Property and the Improvements, to examine and make copies or extracts of the records and books of account of the Grantor with respect to the Property and the Improvements, all at such reasonable times and upon reasonable notice as may be requested by Beneficiary or Trustee; provided that such inspections shall be conducted so as not to unreasonably interfere with Grantor's use and occupancy of the Trust Property and that any information obtained therefrom shall be held in confidence by Beneficiary and Trustee.

**1.11.** *Limitations of Use.* Grantor will not initiate, join in, or consent to any rezoning of the Property or any change in any private restrictive covenant, or other public or private restrictions limiting or defining the uses that may be made of all or any part of the Property and the Improvements without the prior written consent of Beneficiary.

**1.12.** *Insurance.*

**1.12.1.** *Property and Other Insurance.* Grantor will obtain and maintain in full force and effect during the term of this Trust Deed (i) all risk property insurance together with endorsements for replacement cost coverage, inflation adjustment, and vandalism and malicious mischief coverage, all in amounts not less than the full replacement cost of all Improvements; (ii) comprehensive general liability insurance with limits, coverages, risks insured and waiver of subrogation clauses reasonably acceptable to Beneficiary, and in no event less than $2,000,000 combined single limit coverage; and (iii) unless Beneficiary otherwise agrees in writing, rent loss or business interruption insurance in an amount no less than the total annual rents provided for in all leases for all or any portion of the Trust Property. In addition, Grantor will obtain and maintain all such other insurance coverages which at the time are commonly carried for similar property, in such amounts as Beneficiary may require.

**1.12.2.** *Insurance Companies and Policies.* All insurance will be written by a company or

Exhibit 2 - Page 9 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

companies reasonably acceptable to Beneficiary; will contain a mortgagee clause in favor of Beneficiary with loss proceeds under any policy payable to Beneficiary, subject to the terms of this Trust Deed; will require 30 days' prior written notice to Beneficiary of cancellation or reduction in coverage; will contain endorsements that no act or negligence of Grantor or any occupant, and no occupancy or use of the Property for purposes more hazardous than permitted by the terms of the policy will affect the validity or enforceability of such insurance as against Beneficiary; will be in full force and effect on the date of this Trust Deed; and will be accompanied by proof of premiums paid for the current policy year. Beneficiary will be named as an additional insured on all liability policies. Grantor will forward to Beneficiary, upon request, a certificate evidencing the coverages required under this Trust Deed and copies of all policies.

**1.12.3.** *Blanket Policy.* If a blanket policy is issued, a certified copy of that policy will be furnished together with a certificate indicating that Beneficiary is an insured under that policy in the proper designated amount.

**1.12.4.** *Insurance Proceeds.* All proceeds from any insurance on the Property will be used in accordance with the provisions of Section 1.14.

**1.13.** *Assignments of Policies Upon Foreclosure.* In the event of foreclosure of the lien of this Trust Deed or other transfer of title or assignment of the Trust Property in whole or in part, all right, title and interest of Grantor in and to all policies of insurance procured under Section 1.12 will inure to the benefit of and pass to the successors in interest of Grantor or the purchaser or grantee of all or any part of the Trust Property. Grantor shall fully cooperate in executing such documents and taking other such further action as may be required to effect such assignment.

**1.14.** *Casualty/Loss Restoration.*

**1.14.1.** After the occurrence of any casualty to the Property, whether or not required to be insured against as provided in this Trust Deed, Grantor will give prompt written notice of such casualty to Beneficiary, specifically describing its nature and cause and the extent of the damage or destruction to the Property and Improvements. Beneficiary may make proof of loss if it is not made promptly by Grantor.

**1.14.2.** Grantor assigns to Beneficiary all insurance proceeds which Grantor may be entitled to receive with respect to any casualty. Beneficiary may, at its option, apply all or any portion of the insurance proceeds to the reduction of the Obligations in such order as Beneficiary may determine, whether or not such obligations are then due, or apply all or any portion of the insurance proceeds to the cost of restoring and rebuilding the portion of the Property and Improvements that were damaged or destroyed.

**1.15.** *Actions to Protect Trust Property.* If Grantor fails to obtain the insurance required by Section 1.12, to make the payments required by Section 1.9 (other than payments which the Grantor is contesting in accordance with Section 1.9.2) or to perform or observe any of its other covenants or agreements under this Trust Deed, Beneficiary may, without obligation to do so, obtain such insurance or make such payments, or take other action which it deems appropriate to remedy such failure. All sums, including reasonable attorney fees, so

Exhibit 2 - Page 10 of 26

expended or expended to maintain the lien or estate of this Trust Deed or its priority, or to protect or enforce any of Beneficiary's rights under this Trust Deed, or to recover any indebtedness secured by this Trust Deed, will be a lien on the Trust Property, will be secured by this Trust Deed, and will be paid by Grantor upon demand, together with interest at the default rate provided in the Note. No payment or other action by Beneficiary under this section will impair any right or remedy available to Beneficiary or constitute a waiver of any default. In connection with the preceding, the following disclosure is made pursuant to Oregon statute (ORS 746.201):

### WARNING

Unless Grantor provides Beneficiary with evidence of the insurance coverage as required by this Trust Deed, Beneficiary may purchase insurance at Grantor's expense to protect Beneficiary's interest. This insurance may, but need not, also protect Grantor's interest. If the collateral becomes damaged, the coverage Beneficiary purchases may not pay any claim Grantor makes or any claim made against Grantor. Grantor may later cancel this coverage by providing evidence that Grantor has obtained property coverage elsewhere.

Grantor is responsible for the cost of any insurance purchased by Beneficiary. The cost of this insurance may be added to Grantor's contract or loan balance. If the cost is added to Grantor's contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date Grantor's prior coverage lapsed or the date Grantor failed to provide proof of coverage.

The coverage Beneficiary purchases may be considerably more expensive than insurance Grantor can obtain on its own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

**1.16.** *Estoppel Certificates.* Grantor, within ten (10) days of request, will furnish Trustee and Beneficiary a written statement, duly acknowledged, of the amount of the Obligations secured by this Trust Deed and whether any offsets or defenses exist against the Obligations. If Grantor fails to furnish such a statement within the time allowed, Beneficiary will be authorized, as Grantor's attorney-in-fact, to execute and deliver such statement. Upon request, Grantor will also use its reasonable efforts to obtain and deliver to Beneficiary a written certificate from each lessee of all or any part of the Trust Property that its lease is in effect, that there are no defaults by the lessor under such lease, or if any such defaults exist, identifying the same, and that rent is not paid more than 30 days in advance.

### ARTICLE II
### CONDEMNATION

**2.1.** *Condemnation.*

    **2.1.1.** Should all or any part of the Trust Property or interest in the Trust Property be

Exhibit 2 - Page 11 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

taken or damaged by reason of any public improvement, eminent domain or condemnation proceeding, or settlement in lieu thereof, or in any other manner (a "Condemnation"), or should Grantor receive any notice or other information regarding such proceeding or offer of settlement in lieu thereof, Grantor will give immediate notice to Beneficiary.

**2.1.2.** Beneficiary will be entitled to all compensation, awards and other payments ("Condemnation Proceeds") or relief, and will be entitled, at its option, to commence, appear in and prosecute any Condemnation proceeding in its own or Grantor's name and make any compromise or settlement in connection with such Condemnation. If the Trust Property is taken in its entirety by condemnation, all Obligations secured by this Trust Deed, at Beneficiary's election, will become immediately due and collectible.

**2.1.3.** Beneficiary may, at its sole option, apply all or any part of the Condemnation Proceeds to the reduction of the Obligations in such order as Beneficiary may determine, or apply all or any part of the Condemnation Proceeds to the cost of restoring and improving the remaining Property and Improvements. In the event that Beneficiary elects to apply the Condemnation Proceeds to restoration and improvement, those proceeds will be held by Beneficiary and will be released only upon such terms and conditions as Beneficiary may require, including prior approval of plans and release of liens. No Condemnation Proceeds will be released if Grantor is in default under this Trust Deed.

## ARTICLE III
### ASSIGNMENTS OF LEASES, RENTS, ISSUES AND PROFITS

**3.1.** *Assignment.* Grantor assigns and transfers to Beneficiary (a) all leases, subleases, licenses, rental contracts and other agreements, both now existing and arising at any time in the future, relating to the occupancy or use of all or any portion of the Trust Property, including all modifications, extensions and renewals (the "Leases"), and (b) all rents, revenues, issues, profits, income, proceeds and benefits derived from the Trust Property and the lease, rental or license of all or any portion of the Trust Property, including lease and security deposits (collectively, the "Rents"). This assignment is intended by Grantor and Beneficiary to create a present and unconditional assignment to Beneficiary, subject only to the license set forth in Section 3.04 below.

**3.2.** *Rights of Beneficiary.* Subject to the provisions of Section 3.04 below giving Grantor a revocable, limited license, Beneficiary will have the right, power and authority to:

**3.2.1.** notify tenants, renters, licensees and other obligors under any of the Leases that the Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary, whether or not Beneficiary has foreclosed or commenced foreclosure proceedings against the Trust Property, and whether or not Beneficiary has taken possession of the Trust Property;

**3.2.2.** to discount, settle, compromise, release or extend the time for payment of, any amounts owing under any of the Leases and any Rents on terms acceptable to Beneficiary;

Exhibit 2 - Page 12 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

**3.2.3.** to collect and enforce payment of Rents and all provisions of the Leases, and to prosecute any action or proceeding, in the name of Grantor or Beneficiary, with respect to any and all Leases and Rents; and

**3.2.4.** to exercise any and all other rights and remedies of the lessor in connection with any of the Leases and Rents.

**3.3.** *Application of Receipts.* Beneficiary will have the right, power and authority to use and apply any Rents received under this Article III (a) for the payment of costs and expenses incurred in connection with enforcing or defending the terms of or the rights of Beneficiary under this assignment and in collecting any Rents; and (b) for the operation and maintenance of the Trust Property and the payment of all costs and expenses in connection with such operation and maintenance, including the payment of utilities, taxes, assessments, governmental charges and insurance. After the payment of all such costs and expenses, and after Beneficiary has set up such reserves as it deems necessary in its sole discretion for the proper management of the Trust Property, Beneficiary will apply all remaining Rents collected and received by it to the reduction of the Obligations in such order as Beneficiary determines. The exercise or failure by Beneficiary to exercise any of the rights or powers granted in this assignment will not constitute a waiver of default by Grantor under this Trust Deed, or any of the other Loan Documents.

**3.4.** *License.* Beneficiary grants to Grantor a revocable license to collect and receive the Rents. Such license may be revoked by Beneficiary, without notice to Grantor, upon the occurrence of any event of default under this Trust Deed, including any default by Grantor of its covenants in this Article III. Unless and until such license is revoked, Grantor agrees to apply the proceeds of Rents to the payment of the Obligations and to the payment of taxes, assessments, governmental charges, insurance premiums and other obligations in connection with the Trust Property, and to the maintenance of the Trust Property, before using such proceeds for any other purpose. Grantor agrees to (a) observe and perform all Grantor's obligations under the Leases; (b) enforce or secure at Grantor's expense the performance of every obligation to be performed by any lessee or other party under the Leases; (c) promptly give notice to Beneficiary of any default by any such lessee or other party under any of the Leases, and promptly provide Beneficiary a copy of any notice of default given to any such lessee or other party; (d) not collect any Rents more than 30 days in advance of the time when they become due, or anticipate any other payments under the Leases, except for bona fide security deposits not in excess of an amount equal to two months' rent; (e) not further assign or hypothecate any of the Leases or Rents; (f) except with Beneficiary's prior written consent, not waive, release, or in any other manner discharge any lessee or other party from any of its obligations under any of the Leases; (g) except with Beneficiary's prior written consent, not modify or amend any of the Leases; (h) except with Beneficiary's prior written consent, not cancel, terminate, or accept surrender of any of the Leases unless Grantor has entered into a Lease for the space to be vacated upon terms at least as favorable to Grantor, commencing within 30 days after such cancellation, termination or surrender; (i) obtain Beneficiary's prior written approval as to the form and content of all future Leases and any modifications of any present or future leases; (j) promptly deliver copies of all present and future Leases to

Exhibit 2 - Page 13 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

Beneficiary; and (k) appear in and defend, at Grantor's sole cost and expense, any action or proceeding arising out of or in connection with the Leases or the Rents.

**3.5.** *Limitation of Beneficiary's Obligations.* Notwithstanding the assignment provided for in this Article III, Beneficiary will not be obligated to perform or discharge, and Beneficiary does not undertake to perform or discharge, any obligation or liability with respect to the Leases or the Rents. This assignment will not operate to place responsibility for the control, care, maintenance or repair of the Trust Property upon Beneficiary, or to make Beneficiary responsible for any condition of the Property. Beneficiary will be accountable to Grantor only for sums actually collected and received by Beneficiary pursuant to this assignment. Grantor shall hold Beneficiary fully harmless from, indemnify Beneficiary for and defend Beneficiary against any and all claims, demands, liabilities, losses, damages and expenses, including attorney fees, arising out of any of the Leases, with respect to any of the Rents, or in connection with any claim which may be asserted against Beneficiary on account of this assignment or any obligation or undertaking alleged to arise from such assignment.

**3.6.** *Termination.* The assignment provided for in this Article III shall continue in full force and effect until all of the Obligations have been fully paid and satisfied and the Loan Documents have been terminated. At such time, this assignment and the authority and powers in this Article III granted by Grantor to Beneficiary will terminate.

**3.7.** *Attorney-in-Fact.* Grantor irrevocably constitutes and appoints Beneficiary, and each of its officers, as its true and lawfully attorney-in-fact, with power of substitution, to undertake and execute any and all of the rights, powers and authorities described in this Article III with the same force and effect as if undertaken or performed by Grantor, and Grantor ratifies and confirms any and all such actions which may be taken or omitted to be taken by Beneficiary, its employees, agents and attorneys.

## ARTICLE IV
### SECURITY AGREEMENT AND FIXTURE FILING

**4.1** To secure the Obligations, Grantor grants to Beneficiary a security interest in the following:
(i) the Trust Property to the extent it is not encumbered by this Trust Deed as a first priority real estate lien; (ii) all personal property that is used or will be used in the construction of any Improvements on the Trust Property; (iii) all personal property that is now or will in the future be placed on or in the Trust Property or Improvements; (iv) all personal property that is derived from or used in connection with the use, occupancy, or enjoyment of the Trust Property; (v) all property defined in the Uniform Commercial Code as adopted in the state of Oregon as accounts, equipment, fixtures, and general intangibles, to the extent the same are used at, or arise in connection with the ownership, maintenance, or operation of, the Trust Property; (vi) all causes of action, claims, security deposits, advance rental payments, utility deposits, refunds of fees or deposits paid to any governmental authority, refunds of taxes, and refunds of insurance premiums relating to the Trust Property; and (vii) all present and future attachments, accessions, amendments, replacements, additions, products, and proceeds of

Exhibit 2 - Page 14 of 26

Case 22-31304-pcm12   Doc 31   Filed 01/10/23

every nature of the preceding. This Trust Deed constitutes a security agreement and "fixture filing" under the Uniform Commercial Code-Secured Transactions statutes of the state of Oregon. The mailing address of Grantor and the address of Beneficiary from which information may be obtained are set forth in the introductory paragraph of this Trust Deed.

## ARTICLE V
### EVENTS OF DEFAULT; REMEDIES

**5.1.** *Events of Default.* Each of the following will constitute an Event of Default under this Trust Deed and under each of the other Loan Documents:

**5.1.1.** *Nonpayment.* Failure of Grantor to pay any of the Obligations, including payments required by this Trust Deed or any other Loan Document, on or before the due date.

**5.1.2.** *Breach of Other Covenants.* Failure of Grantor to perform or abide by any other covenant included in the Loan Documents, within five (5) days after written notice from Lender advising Grantor of such failure.

**5.1.3.** *Misinformation.* Falsity when made in any material respect of any representation, warranty or information furnished by Grantor or its agents to Beneficiary in or in connection with any of the Obligations.

**5.1.4.** *Other Default.* The occurrence of any other event of default under the Note or any other document evidencing or securing the Note.

**5.1.5.** *Bankruptcy.* The occurrence of any of the following with respect to the Property, Grantor, or the then owner of the Property or Improvements: (i) appointment of a receiver, liquidator, or trustee that is not dismissed or removed within 30 days of appointment; (ii) adjudication as bankrupt or insolvent; (iii) voluntary filing of any petition under any state or federal bankruptcy, reorganization, moratorium or insolvency law or an involuntary filing of any such petition that is not dismissed or removed within 30 days; (iv) institution of any proceeding for dissolution or liquidation; (v) inability to pay debts when due; (vi) any general assignment for the benefit of creditors; or (vii) abandonment of the Property or Improvements for more than 30 days without reasonable justification.

**5.1.6.** *Transfer; Due-on-Sale; Due-on-Encumbrance.* Any sale, gift, conveyance, contract for conveyance, transfer, assignment, encumbrance, pledge or grant of a security interest in all or any part of the Trust Property or any interest in the Trust Property, either voluntarily, involuntarily, or by the operation of law (a "Transfer"), without Beneficiary's prior written consent. The provisions of this subsection (f) will apply to each and every Transfer, regardless of whether or not Beneficiary has consented or waived its rights in connection with any previous Transfer. Beneficiary may attach such conditions to its consent under this subsection (f) as Beneficiary may determine in its sole discretion, including an increase in the interest rate or the payment of transfer or assumption fees, payment of administrative and legal fees and costs incurred by Beneficiary.

**5.1.7.** Certain Taxes. For purposes of this subsection (g), "State Tax" means:

**5.1.7.1.** A specific tax on mortgages, trust deeds, secured indebtedness or any part of the indebtedness secured by this Trust Deed.

**5.1.7.2.** A specific tax on the grantor of property subject to a trust deed which the

Exhibit 2 - Page 15 of 26

taxpayer is authorized or required to deduct from payments on the trust deed.

**5.1.7.3.** A tax on property chargeable against the Beneficiary or Trustee under a trust deed or holder of the note securing such a trust deed.

**5.1.7.4.** A specific tax (other than an income tax or a gross receipts tax) on all or any portion of the indebtedness or on payments of principal and interest made by Grantor.

**5.1.7.5.** If any State Tax is enacted after the date of this Trust Deed and is applicable to this Trust Deed, enactment of the State Tax will constitute an event of default, unless the following conditions are met:

**5.1.7.5.1.** Grantor may lawfully pay the tax or charge imposed by the State Tax without causing any resulting economic disadvantage or increase of tax to Beneficiary or Trustee, and

**5.1.7.5.2.** Grantor pays or agrees in writing to pay the tax or charge within thirty (30) days after notice from Beneficiary or Trustee that the State Tax has been enacted.

**5.2.** *Remedies in Case of Default.* If an Event of Default occurs, Beneficiary or Trustee, as the case may be, may exercise any one or more of the following rights and remedies, in addition to any other remedies which may be available by law, in equity, or otherwise:

**5.2.1.** *Acceleration.* Beneficiary may declare all or any portion of the Obligations immediately due and payable.

**5.2.2.** *Receiver.* Beneficiary may have a receiver appointed for the Trust Property. Beneficiary will be entitled to the appointment of a receiver as a matter of right whether or not the apparent value of the Trust Property exceeds the amount of the indebtedness secured by this Trust Deed. Employment by Trustee or Beneficiary will not disqualify a person from serving as receiver. Grantor consents to the appointment of a receiver at Beneficiary's option and waives any and all defenses to such an appointment.

**5.2.3.** *Possession.* Beneficiary may, either through a receiver or as lenderinpossession, enter and take possession of all or any part of the Trust Property and use, operate, manage and control it as the Beneficiary deems appropriate in its sole discretion. Upon request after an Event of Default, Grantor will peacefully relinquish possession and control of the Trust Property to Beneficiary or any receiver appointed under this Trust Deed.

**5.2.4.** *Rents.* Beneficiary may revoke Grantor's right to collect the Rents, and may, either itself or through a receiver, collect the Rents. Beneficiary will not be deemed to be in possession of the Property solely by reason of exercise of the rights contained in this subsection (d). If Rents are collected by Beneficiary under this subsection (d), Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact, with power of substitution, to endorse instruments received in payment of Rents in the name of Grantor and to negotiate and collect the proceeds of such instruments. After payment of all Obligations, any remaining amounts will be paid to Grantor and this power will terminate.

**5.2.5.** *Power of Sale.* Beneficiary may direct Trustee, and Trustee will be empowered, to foreclose the Property by advertisement and sale under applicable law.

Exhibit 2 - Page 16 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

**5.2.6.** *Foreclosure.* Beneficiary may judicially foreclose this Trust Deed and obtain a judgment foreclosing Grantor's interest in all or any part of the Property and giving Beneficiary the right to collect any deficiency remaining due after disposition of the Trust Property.

**5.2.7.** *Fixtures and Personal Property.* With respect to any fixtures or personal property subject to a security interest in favor of Beneficiary, Beneficiary may exercise any and all of the rights and remedies of a secured party under the Uniform Commercial Code.

**5.2.8.** *Abandonment.* Beneficiary may abandon all or any portion of the Trust Property by written notice to Grantor.

**5.3.** *Sale.* In any sale under this Trust Deed or pursuant to any judgment, the Trust Property, to the extent permitted by law, may be sold as an entirety or in one or more parcels and in such order as Beneficiary may elect, without regard to the right of Grantor, any person claiming under Grantor or any guarantor or surety to the marshaling of assets. The purchaser at any such sale will take title to the Trust Property or the part of the Trust Property sold free and clear of the estate of Grantor, the purchaser being discharged from all liability to see to the application of the purchase money. Any person, including Beneficiary, may purchase at any such sale. Grantor irrevocably appoints Beneficiary as Grantor's attorneyinfact, with power of substitution, to make all appropriate transfers and deliveries of all or any part of the Trust Property so sold and, for that purpose, Beneficiary may execute all appropriate instruments of transfer. Nevertheless, Grantor will ratify and confirm, or cause to be ratified and confirmed, any such sale or sales by executing and delivering, or by causing to be executed and delivered, to Beneficiary or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of Beneficiary, for such purpose.

**5.4.** *Cumulative Remedies.* All remedies under this Trust Deed are cumulative and not exclusive. Any election to pursue one remedy will not preclude any other remedy. An election by Beneficiary to cure under Section 1.15 will not constitute a waiver of the default or of any of the remedies provided in this Trust Deed. No delay or omission in exercising any right or remedy will impair that or any other right or remedy or constitute a waiver of the default.

**5.5.** *Receiver or TrusteeinPossession.* Upon taking possession of all or any part of the Trust Property, Trustee, Beneficiary or a receiver may:

**5.5.1.** *Management.* Use, operate, manage, control and conduct business with the Trust Property and make expenditures for such purposes and for maintenance and improvements as are reasonably necessary.

**5.5.2.** *Rents and Revenues.* Collect all rents, revenues, income, issues and profits from the Trust Property and apply such sums to the reasonable expenses of use, operation, management, maintenance and improvements.

**5.5.3.** *Construction.* At its option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors and make any changes in plans and specifications as it deems appropriate.

**5.5.4.** *Additional Indebtedness.* If the revenues produced by the Trust Property are

Exhibit 2 - Page 17 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

insufficient to pay expenses, Beneficiary, Trustee or the receiver may borrow or advance such sums upon such terms as it deems reasonably necessary for the purposes stated in this section. All advances will bear interest, unless otherwise provided, at the rate set forth in the Note, and repayment of such sums will be secured by this Trust Deed.

**5.6.** *Application of Proceeds.* All proceeds realized from the exercise of the rights and remedies under this Article V will be applied as follows:

    **5.6.1.** *Costs and Expenses.* To pay all costs of exercising such rights and remedies, including the costs of maintaining and preserving the Trust Property, the costs and expenses of any receiver or lenderinpossession, the costs of any sale, and the costs and expenses provided for in Section 6.07 below.

    **5.6.2.** *Indebtedness.* To pay all Obligations, in such order as Beneficiary deems appropriate in its sole discretion.

    **5.6.3.** *Surplus.* The surplus, if any, remaining after satisfaction of all the Obligations will be paid to the clerk of the court in the case of a judicial foreclosure proceeding, otherwise to the person or persons legally entitled to such surplus.

**5.7.** *Deficiency.* No sale or other disposition of all or any part of the Trust Property pursuant to this Article V will be deemed to relieve Grantor of any of the Obligations, except to the extent the proceeds of such sale or disposition are applied to the payment of such Obligations or if a deficiency judgment is precluded by applicable law. If the proceeds of sale, collection or other realization of or upon the Trust Property are insufficient to cover the costs and expenses of such realization and the payment in full of the Obligations, Grantor will remain liable for any deficiency to the maximum extent permissible under applicable law.

**5.8.** *Waiver of Stay, Extension, Moratorium and Valuation Laws.* To the fullest extent permitted by law, Grantor waives the benefit of any existing or future stay, extension or moratorium law which may affect observance or performance of the provisions of this Trust Deed and any existing or future law providing for the valuation or appraisal of the Trust Property prior to any sale.

## ARTICLE VI
### GENERAL PROVISIONS

**6.1.** *Time Is of the Essence.* Time is of the essence with respect to all covenants and obligations of Grantor under this Trust Deed.

**6.2.** *Reconveyance by Trustee.* At any time upon the request of Beneficiary, payment of Trustee's fees, if any, and presentation of this Trust Deed, without affecting liability of any persons for the payment of the Obligations, Trustee may reconvey, without warranty, all or any part of the Trust Property. The grantee in any reconveyance may be described as the "person or persons legally entitled to the property conveyed," and the recitals of any facts in such reconveyance will be conclusive proof of their truthfulness. Grantor shall pay: all costs, fees and expenses of this Trust Deed, including, without limiting the

Exhibit 2 - Page 18 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance as well as Beneficiary costs, fees and expenses associated with the facilitation and tracking of works performed, or to be performed, by Trustee in an amount not to exceed $550.00 and all lawful charges, costs and expenses in the event of reinstatement of, following default in, this Trust Deed or the obligations secured hereby.

**6.3.** *Notice.* Except as otherwise provided in this Trust Deed, all notices permitted or required by this Trust Deed will be in writing and may be delivered by hand, or mailed by first class, registered or certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party at its address set forth at the outset of this Trust Deed. Any party may change its address for such notices from time to time by notice to the other parties. Notices given by mail in accordance with this paragraph will be deemed to have been given upon the date of mailing; notices given by hand will be deemed to have been given when received.

**6.4.** *Substitute Trustee.* In the event of dissolution or resignation of Trustee, Beneficiary may substitute one or more trustees to execute the trust created by this Trust Deed, and the new trustee(s) will succeed to all the powers and duties of the prior trustee(s).

**6.5.** *Trust Deed Binding on Successors and Assigns.* This Trust Deed will be binding upon and inure to the benefit of the successors and assigns of Grantor, Trustee and Beneficiary. If the Trust Property or any portion thereof shall at any time be vested in any person other than Grantor, Beneficiary shall have the right to deal with such successor regarding this Trust Deed, the Trust Property, and the Obligations in such manner as Beneficiary deems appropriate in its sole discretion, without notice to or approval by Grantor and without impairing Grantor's liability for the Obligations.

**6.6.** *Indemnity.* Grantor will hold Beneficiary and Trustee and their respective directors, officers, employees, agents and attorneys, harmless from and indemnify them for any and all claims, demands, damages, liabilities and expenses, including attorney fees and court costs, arising out of or in connection with Trustee's or Beneficiary's interest under this Trust Deed, except Grantor will not be liable for acts performed by the Beneficiary or Trustee in violation of applicable law.

**6.7.** *Expenses and Attorney Fees.* If Beneficiary refers any of the Obligations to an attorney for collection or seeks legal advice following a default; if Beneficiary is the prevailing party in any litigation instituted in connection with any of the Obligations; or if Beneficiary or any other person initiates any judicial or nonjudicial action, suit or proceeding in connection with any of the Obligations or the Trust Property (including proceedings under federal bankruptcy law, eminent domain, under probate proceedings or in connection with any state or federal tax lien), and an attorney is employed by Beneficiary to (a) appear in any such action, suit or proceeding, or (b) reclaim, seek relief from a judicial or statutory stay, sequester, protect, preserve or enforce Beneficiary's interests, then in any such event Grantor will pay reasonable attorney fees, costs and expenses incurred by Beneficiary and/or its attorney in connection with the above

Exhibit 2 - Page 19 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

mentioned events or any appeals related to such events, including costs incurred in searching records, the cost of title reports and the cost of surveyors' reports. Such amounts will be secured by this Trust Deed and, if not paid upon demand, will bear interest at the default rate specified in the Note.

**6.8.** *Applicable Law.* The laws of the state of Oregon will govern the validity, interpretation, performance and enforcement of this Trust Deed.

**6.9.** *Captions.* The captions to the sections and paragraphs of this Trust Deed are included only for the convenience of the parties and will not have the effect of defining, diminishing or enlarging the rights of the parties or affecting the construction or interpretation of any portion of this Trust Deed.

**6.10.** *"Includes" or "Including" Defined.* As used in this Trust Deed, the words "includes" and "including" are not limiting.

**6.11.** *"Person" Defined.* As used in this Trust Deed, the word "person" means any natural person, partnership, trust, corporation or other legal entity of any nature.

**6.12.** *Severability.* If any provision of this Trust Deed is held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability will not affect any other provisions of this Trust Deed, and such other provisions will be construed as if the invalid, illegal or unenforceable provision had never been contained in this Trust Deed.

**6.13.** *Entire Agreement.* This Trust Deed together with the Loan Documents contains the entire agreement of the parties with respect to the subject matter hereof. No prior agreement, statement or promise made by any party to this Trust Deed that is not contained in this Trust Deed will be binding or valid.

**6.14.** *Commercial Property.* Grantor covenants and warrants that the Property and Improvements are used by Grantor exclusively for business and commercial purposes. Grantor also covenants and warrants that the Property and Improvements are not now, and at no time in the future will be, occupied as the principal residence of Grantor, Grantor's spouse, or Grantor's minor or dependent child.

**6.15.** *Counterparts.* This Trust Deed may be executed in two or more counterparts, each of which will be considered an original, but all of which together will constitute the same instrument.

**6.16.** *Participation Interests.* Beneficiary may, without the consent of Grantor, at any time grant one or more participation interests in the Loan Documents to any person.

**6.17.** *WARNING (ORS 93.040).* BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS

Exhibit 2 - Page 20 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

**6.18.** *STATUTORY DISCLOSURE (ORS 41.580).* UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY THE LENDER TO BE ENFORCEABLE.

**[SIGNATURE PAGE FOLLOWS]**

Exhibit 2 - Page 21 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

IN WITNESS WHEREOF, the Grantor has executed this Trust Deed as of the date first set forth above.

                                   "Grantor"

Hoodstock Enterprises, LLC


By: _M. Kathleen Heron_____                    _10-9-2020_
Signature: M. Kathleen Heron, Member                        Date
On Behalf of: Hoodstock Enterprises, LLC


STATE OF _Oregon_          )
                           ) ss.
COUNTY OF _Hood River_     )

    I hereby certify that I know or have satisfactory evidence that M. Kathleen Heron is/are the person(s) who appeared before me. Said person(s) acknowledged that he/she/they signed this instrument and acknowledged it to be his/her/their free and voluntary act for the uses and purposes mentioned in this instrument and, on oath, stated that he/she/they is/are authorized to execute the instrument on behalf of Grantor.

    Given Under My Hand And Official Seal this __9th__ day of _October_, 2020.

Signature          _Mary Miller_____

Printed Name       _Mary Miller_____

NOTARY PUBLIC in and for the State of _Oregon_

Residing at          _The Dalles_____

My Commission Expires  _7.19.2024_____



OFFICIAL STAMP
MARY MILLER
NOTARY PUBLIC   OREGON
COMMISSION NO. 1001878
MY COMMISSION EXPIRES JULY 19, 2024

Exhibit 2 - Page 22 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

By: _____    10 - 9 - 2020

Signature: Mark Heron, Member      Date
On Behalf of: Hoodstock Enterprises, LLC

STATE OF _Oregon_ )
                        ) ss.
COUNTY OF _Hood River_ )

    I hereby certify that I know or have satisfactory evidence that Mark Heron is/are the person(s) who appeared before me. Said person(s) acknowledged that he/she/they signed this instrument and acknowledged it to be his/her/their free and voluntary act for the uses and purposes mentioned in this instrument and, on oath, stated that he/she/they is/are authorized to execute the instrument on behalf of Grantor.

    Given Under My Hand And Official Seal this _9th_ day of _October_, 2020.

Signature    _Mary Miller_

Printed Name    _Mary Miller_

NOTARY PUBLIC in and for the State of _Oregon_

Residing at    _The Dalles_

My Commission Expires    _7.19.2024_

OFFICIAL STAMP
MARY MILLER
NOTARY PUBLIC OREGON
COMMISSION NO. 1001878
MY COMMISSION EXPIRES JULY 19, 2024

Exhibit 2 - Page 23 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

**EXHIBIT A**
**Real Property Description**

**APN:** ███████████

**Situs Address:** 4551 Post Canyon Drive Hood River, OR, 97031

**Legal Description:** That portion of the following described property lying West of Phelps Creek in Section 33, Township 3 North, Range 10 East of the Willamette Meridian, in the County of Hood River and State of Oregon: Beginning at a point in the West line of the Southeast quarter of the Southwest quarter of Section 33, Township 3 North, Range 10 East of the Willamette Meridian, in the County of Hood River and State of Oregon, that is North 00°25'05" West 435.60 feet from the Southwest corner of said legal subdivision; thence North 00°25'05" West along the West line of the Southeast quarter of the Southwest quarter of said Section 33 a distance of 891.75 feet to the Northwest corner of said legal subdivision; thence North 89°33'41" East along the North line of the Southeast quarter of the Southwest quarter of said Section 33, a distance of 1252.77 feet to the West line of that tract of land conveyed to Harold W. Dorzab et ux, by Deed recorded March 13, 1967, Film No. 670317, Deed Records Hood River County, State of Oregon; thence South 00°18'41" East a distance of 208.00 feet along the West line of the tract of land conveyed to Harold W. Dorzab; thence North 89°33'41" East a distance of 154.04 feet to a point on the West side of Phelps Creek; thence South along the West side of Phelps Creek a distance of 545 feet, more or less, to a point that is 574.20 feet North 00°18'41" West and 36.50 feet North 89°27'37" East of the South quarter corner of Section 33; thence South 89°27'37" West a distance of 36.50 feet to a point on the North/South Section line of Section 33; thence South 89°25'34" West a distance of 475.78 feet to a point on the West line of that tract of land conveyed to C. B. Young et ux by deed recorded April 20, 1966, Film No. 660736, Deed Records of Hood River County, State of Oregon; thence South 00°25'05" East, South along the West line of said Young tract of land a distance of 574.20 feet to a point on the South line of said Section 33; thence South 89°25'34" West along the South line of Section 33, a distance of 588.60 feet to a point; thence North 00°25'05" West a distance of 435.60 feet to a point; thence South 89°25'34" West a distance of 250.00 feet to the true point of beginning. EXCEPTING THEREFROM the following tract of land: That portion of the following described property in Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon: Commencing at the Southwest corner of the Southeast quarter of the Southwest quarter of Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon; thence North 89°25'34" East along the South line of said Section 33 a distance of 339.15 feet to a point; thence North 00°25'05" West parallel with the West line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 435.60 feet to the true point of beginning; thence continuing North 00°25'05" West parallel with the West line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 435.60 feet to a point; thence North 89°25'34" East parallel with the South line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 200 feet to a point; thence South 00°25'05" East parallel with the West line of the Southeast quarter of the Southwest quarter of Section 33, a

Exhibit 2 - Page 24 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

distance of 435.60 feet to a point; thence South 89°25'34" West parallel with the South line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 200 feet to the true point of beginning. ALSO EXCEPTING the following: That portion of the following described property lying West of Phelps Creek in Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon. Commencing at a point in the West line of the Southeast quarter of the Southwest quarter of Section 33, Township 3 North, Range 10 East of the Willamette Meridian in the County of Hood River and State of Oregon, that is North 00°25'05" West 435.60 feet from the Southwest corner of said legal subdivision; thence North 89°25'34" East a distance of 250.00 feet to the POINT OF BEGINNING; thence continuing North 89°25'34" East a distance of 250.00 feet to a 5/8" iron rod; thence South 00°25'05" East to the South line of said Section 33 a distance of 435.60 feet to a 5/8" iron rod on the South line of said Section 33; thence South 89°25'34" West along the South line of said Section 33 a distance of 250.00 feet; thence North 00° West parallel to the West line of the Southeast quarter of the Southwest quarter of Section 33 a distance of 435.60 feet to the TRUE POINT OF BEGINNING.

Exhibit 2 - Page 25 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23

## EXHIBIT B
## Exceptions to Title

Exceptions:

Exhibit 2 - Page 26 of 26

Case 22-31304-pcm12    Doc 31    Filed 01/10/23